Affirmed and Memorandum Opinion
filed February 15, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00959-CR



L. C. Curry, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 262nd District Court

Harris County, Texas

Trial Court
Cause No. 1237307



 

MEMORANDUM OPINION 

            A
jury found appellant L. C. Curry guilty of delivery of less than one gram of
cocaine and, after Curry pleaded “true” to two enhancement allegations,
assessed punishment of seventeen years’ confinement in the Texas Department of
Criminal Justice, Institutional Division.  On appeal, Curry contends the trial
court erred by granting the State’s challenges for cause to three venire
members, submitting a jury charge on constructive delivery, and overruling his objection
to the State’s jury argument in the punishment phase.  Curry also challenges
the factual sufficiency of the evidence to support the jury’s verdict.  We
affirm.

I

            Undercover
narcotics officers Kenneth Echols and Robert Medel were driving through a residential
neighborhood in southeast Houston at about 1:00 p.m. when they saw Curry standing
on a street corner near the intersection of Armstrong and Fidelity streets. 
Officer Echols stopped and told Curry that he wanted to buy $40 worth of
cocaine.  Curry responded, “I can help you out.”  He then jumped into the
officers’ truck bed and directed them to a nearby house. 

            As
the officers waited in the truck, Curry walked down the side of the house until
he was out of view.  He returned three to five minutes later and handed Officer
Medel two crack rocks in exchange for two $20 bills that had been photocopied
earlier.  Once the transaction was completed, Curry walked away and the
officers drove away from the house. 

            Officers
Echols and Medel then signaled a nearby arrest team of officers and gave them a
description of the suspect.  They described the suspect as a black male with a moustache
and beard, wearing dark jeans and a dark shirt.  The officers also gave the
arrest team a description of the house where the drug transaction occurred.  

            Sergeant
Thomas Hanslik, an officer on the arrest team, arrived at the residence and
found two black males outside the house.  He briefly detained them and then released
them because they did not match the description given.  Hanslik knocked on the
front door and a woman who was “very excited” answered and pointed to the back
of the house.  Hanslik walked in the direction the woman indicated and found Curry
in the bathroom.  He was sitting on the toilet with his pants up.  Although
Curry had a beard and was wearing dark jeans, he was not wearing a shirt.  The
officers did not see a dark shirt in the house, nor did they recover the two
$20 bills used to buy the crack. 

            Officer
Hanslik detained Curry and took him outside.  Officer Medel returned to the
residence and, from inside a different vehicle, identified Curry as the
suspect.  Officer Hanslik then arrested Curry. 

II

            In
his first issue, Curry contends the trial court erred by granting the State’s
challenges for cause to three venire members in violation of article 35.16 of
the Code of Criminal Procedure.[1] 
Specifically, he contends venire members 2, 6, and 17 stated that they would possibly
give less credibility to a police officer, but the trial court did not explain
the law to the venire members or ask them if they could set aside their
personal experiences and opinions and follow the law as instructed.  See
Jones v. State, 982 SW.2d 386, 390 (Tex. Crim. App. 1998) (stating that
before a venire member can be properly challenged under article 35.16(b)(3),
the law must be explained to him and he must be asked whether he can follow
that law regardless of his personal views).  Curry argues that, consequently,
there is nothing in the record to indicate that the three venire members could
not set aside their personal experiences and opinions and follow the law.

            The
State argues that Curry waived any error because he did not object to any of
the complained-of challenges for cause or the trial court’s ruling on them.  We
agree.  A party must object to the granting of a challenge for cause before he
can complain of that action on appeal.  Tex. R. App. P. 33.1; Ortiz v. State,
93 S.W.3d 79, 88 (Tex. Crim. App. 2002); Credille v. State, 925 S.W.2d
112, 115 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d).  Curry did not
object when the State moved to strike the specific venire members or at any
other time before the jury was seated and the rest of the panel was excused.  Because
Curry presents nothing for review, we overrule his first issue.

 

III

            In
his second issue, Curry contends the evidence is factually insufficient to
support the jury’s verdict.  Curry acknowledges that two police officers
identified him as the suspect, but argues that these identifications must be
weighed against the fact that the $40 the officers used to buy the crack was not
found on him, he was not wearing a dark shirt when he was found, and no drugs
or drug paraphernalia were found in his possession or in the house where he was
apprehended.  Curry also contends the evidence surrounding the identification
procedure was not well-developed and the jury “had a problem” with his
identification, because it asked for portions of the officers’ testimony
concerning their description and identification of him.  

            Recently,
a majority of judges on the Court of Criminal Appeals determined that the Jackson
v. Virginia[2]
legal-sufficiency standard is the only standard that a reviewing court should
apply in determining whether the evidence is sufficient to support each element
of a criminal offense that the state is required to prove beyond a reasonable
doubt.  See Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)
(plurality op.) (Hervey, J., joined by Keller, P.J., Keasler, and Cochran,
J.J.); id. at 926 (Cochran, J., concurring, joined by Womack, J.) (same
conclusion as plurality).  Accordingly, we will consider Curry’s sufficiency
challenge under the Jackson v. Virginia legal-sufficiency standard.  See
id. at 902; Pomier v. State, 326 S.W.3d 373, 378 (Tex. App.—Houston
[14th Dist.] 2010, no pet.). 

            Both
Officer Echols and Officer Medel identified Curry as the person who provided
the cocaine to them.  Echols testified that, while driving an unmarked car, he
and Medel approached Curry at about 1:00 p.m. and spoke to him about buying
crack.  Curry was standing at Echols’ car window, so Echols got “a good look”
at him.  Curry got in the bed of Echols’ truck and directed the officers to a
house, where he got out and walked down the side of the house until he was out
of view.  A few minutes later, Curry returned, reached through the driver’s-side
window where Echols was seated, and handed cocaine to Medel, who was in the
passenger seat.  Echols identified Curry in court as the person who delivered
the cocaine to Medel.

            Officer
Medel testified that he and Echols approached Curry at about 1:00 p.m. in broad
daylight.  The sun was out and they had very good visibility.  Medel got a good
look at Curry’s face from a distance of two feet as they conducted the
transaction.  Medel testified that he returned to the house where the transaction
occurred within three to five minutes after he and Echols completed the
transaction.  By this time, the arrest team had Curry in custody and the
arresting officers wanted to make sure they had arrested the correct suspect. 
From a distance of about ten or fifteen feet, Medel identified Curry as the
correct suspect.  Medel testified that he based his identification on Curry’s
facial features and his “kind of poofy hair and big scruffy beard,” as well as
the fact that Curry was wearing the same jeans he wore during the cocaine
delivery.  Medel also identified Curry in court.  He noted that Curry’s
appearance had changed since the time of the offense, explaining that Curry
appeared to have cut his hair and his beard was less scruffy.

            A
third officer, James Shultea, testified that he was involved in the undercover
narcotics investigation that resulted in Curry’s arrest.  He provided “close
cover surveillance,” meaning that he kept a close watch on Officers Echols and
Medel for their safety while observing their interaction with the suspect. 
Shultea testified that he got a good look at Curry when he was riding in the
back of the other officers’ truck.  Several minutes after seeing Curry in the
truck, Shultea drove to the house where Curry had been arrested and confirmed
that he was the correct suspect.  At trial, Shultea testified that Curry
“resemble[d]” the person he saw in the back of the truck.  He explained that
Curry had much less facial hair at trial.  Shultea then looked at a photo taken
of Curry on the date of the offense and confirmed that Curry was the person he
saw in the back of the truck.

            Despite
these eyewitness identifications, Curry complains that the evidence is
insufficient because (1) unlike the suspect, he was not wearing a shirt when arrested,
(2) the officers’ purchase money was not recovered, and (3) no drugs were
recovered from him or the house at the time of arrest.  But his arrest while
shirtless merely suggests that he removed his shirt in an effort to thwart
identification.  And the fact that no shirt was found in the house in which
Curry was apprehended has little significance because the officers never
searched the house.  Further, Sergeant Hanslik stated that even if he had seen
a shirt in the house, he would not have seized it as evidence.  

            Likewise,
the officers’ failure to recover their purchase money also fails to render the
evidence insufficient.  Officer Echols testified that it is not uncommon for
officers to not recover purchase money in such a situation because drug dealers
frequently hide the money.  

            Finally,
the absence of illegal drugs or drug paraphernalia on Curry or in the house
does not render the evidence insufficient.  When the officers approached Curry,
he apparently did not have any cocaine in his possession, and he had to direct
them to another location to complete the transaction.  If he had been carrying the
cocaine, presumably he could have completed the transaction on the street where
the officers first encountered him.  The jury could have rationally inferred
that Curry did not carry drugs, but instead kept them somewhere nearby.  And
the officers did not find illegal drugs or drug paraphernalia in the house
because they did not search the house.

            The
testimony of a single eyewitness may be sufficient to support a conviction.  Kromah
v. State, 283 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2009, pet.
ref’d).  Here, three eyewitnesses, all police officers, identified Curry as the
person who delivered cocaine to Medel.  As the sole judge of the witnesses’
credibility, the jury was entitled to believe the testimony of these officers. 
See Lancon v. State, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).  Therefore,
considering all of the evidence in the light most favorable to the verdict, the
jury was rationally justified in finding Curry guilty of delivery of cocaine
beyond a reasonable doubt.  See Brooks, 323 S.W.3d at 902; see also Talley
v. State, 909 S.W.2d 233, 234–235 (Tex. App.—Texarkana 1995, pet. ref’d)
(holding evidence factually sufficient to support appellant’s conviction for
delivery of cocaine based on undercover officers’ identifications of appellant).
 Moreover, Curry concedes that the evidence is legally sufficient.  We
therefore overrule Curry’s second issue.

IV

            In
his third issue, Curry contends the trial court erred by overruling his defense
counsel’s objection to the State’s allegedly improper jury argument in the
punishment phase of the trial.  Curry contends the argument was improper
because it assumed facts not in evidence, improperly assumed community
expectations, and was unduly inflammatory.

            During
her closing argument, defense counsel asked the jury to assess the minimum
sentence of two years’ confinement.  In response, the prosecutor argued: 

            You are a jury of his peers representing the
community of Harris County, Texas.  If you want to give him the minimum, then
that is your right.  It’s in your authority. You can do that if you want to.  

            But what is the thing that you can be sure of
as you sit in these seats right now that’s going to happen if you do that?  Just
as sure as you’re going to get out of this courtroom and get in your cars and
go home, he’s going to go back out there and sell dope.  You can be sure of
that as anything in this world.  

            Now, I gather that if someone were to tell you
that if were [sic] he to be released into anyone of our own neighborhoods each one
of us might feel a little bit differently about it.  But he probably won’t be.  We
don’t know where he’ll go.  Probably somewhere around Fidelity and Armstrong.  Ladies
and gentlemen, the people that live in that area—

At
this point, defense counsel lodged the following objection: “Objection, Your Honor,
this is improper.”  The prosecutor responded that his argument was a plea for
law enforcement and the judge overruled appellant’s objection.  There was no
further comment from any of the parties and the prosecutor continued his argument.

            The
State contends, as a threshold matter, that Curry waived his complaint because
his trial court objection of “improper” argument was too general to preserve
error for appeal.  To preserve an issue for appellate review, a timely and
specific objection is required.  Tex. R. App. P. 33.1.  The purpose of
requiring a specific objection in the trial court is twofold: (1) to inform the
trial judge of the basis of the objection and give him the opportunity to rule
on it; and (2) to give opposing counsel the opportunity to respond to the
complaint.  Resendez v. State, 306 S.W.3d 308, 312 (Tex. Crim. App.
2009).  An objection is sufficient to preserve error when “‘the correct ground
for exclusion was obvious to the judge and opposing counsel.’”  Lankston v.
State, 827 S.W.2d 907, 908 (Tex. Crim. App. 1992) (quoting Zillender v.
State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977)).  Thus, all a party must
do is “let the trial judge know what he wants, why he thinks himself entitled
to it, and to do so clearly enough for the judge to understand him at a time
when the trial court is in a proper position to do something about it.”  Id.
at 909.  But, “when it seems from context that a party failed effectively to
communicate his desire, then reviewing courts should not hesitate to hold that
appellate complaints arising from the event have been lost.”  Id.

            Having
reviewed the argument and objection in context, we conclude that Curry’s
objection that the prosecutor was making an “improper argument” is insufficient
to preserve error in this case because it is a general objection and there is
nothing to indicate that the trial judge understood the objection to encompass
any of the three grounds Curry asserts on appeal.  See Heidelberg v.
State, 144 S.W.3d 535, 542–43 (Tex. Crim. App. 2004) (holding appellant
failed to preserve error when trial judge overruled objection without comment
and record gave no indication of basis for objection asserted on appeal);
Hougham v. State, 659 S.W.2d 410, 414 (Tex. Crim. App. 1983) (holding
appellant’s objection “to this line of argument” was too general to apprise
trial court of grounds for objection).  

            Even
if we assume for purposes of argument that Curry preserved error, however, we conclude
that the argument was not improper.  The four general areas for proper jury
argument are (1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) answer to argument of opposing counsel; and (4) plea for law
enforcement.  Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App.
2000).  The prosecutor may draw all reasonable inferences from the facts in
evidence that are reasonable, fair, and legitimate.  Allridge v. State,
762 S.W.2d 146, 156 (Tex. Crim. App. 1988).  Error exists when facts not
supported by the record are interjected in the argument, but such error is not
reversible unless, in light of the record as a whole, the argument is extreme
or manifestly improper.  Id. at 155; Wright v. State, 178 S.W.3d
905, 929 (Tex. App.—Houston [14th Dist.] 2005, pet ref’d).

            The
prosecutor’s suggestion that Curry would probably return to the neighborhood in
which he was arrested is a permissible inference.  Curry was in the
neighborhood when the officers approached him and he demonstrated a knowledge
of the neighborhood when he directed the officers to a nearby house.  Given his
connection to this neighborhood, it is logical to infer that he might return to
the neighborhood, a familiar environment, after his incarceration.  See
Martinez v. State, 715 S.W.2d 725, 727 (Tex. App.—Houston [14th Dist.]
1986, pet. ref’d) (prosecutor’s closing argument in which he suggested a
not-guilty verdict could result in the defendant driving through the jurors’
neighborhoods that night was proper because it could be deduced that defendant
would drive through neighborhoods if found not guilty); see also Parks v.
State, 858 S.W.2d 623, 631–32 (Tex. App.—Fort Worth 1993, pet. ref’d)
(prosecutor’s argument that “Someday our local dope cook will have his factory
right next to Miller Brewery” was a proper plea for law enforcement and,
therefore, was not an improper argument about matters outside the record). 

            To
the extent Curry is complaining that the prosecutor went beyond the evidence
when he argued that Curry would continue to sell drugs, this claim is meritless
because it is a reasonable deduction or inference from the evidence and a
proper plea for law enforcement.  The prosecutor’s argument is a reasonable
inference based on Curry’s numerous convictions, including nine prior felony
drug convictions for possession or delivery.  The record indicates Curry has
not been rehabilitated by his previous incarcerations and will likely continue
to commit similar crimes after he completes his current sentence.  Also, a
prosecutor’s plea to lock up the defendant for a long time to prevent him from
committing the same crime again is a proper plea for law enforcement.  See
Kirkpatrick v. State, 515 S.W.2d 289, 293 (Tex. Crim. App. 1974); see
also Pittman v. State, 9 S.W.3d 432, 434 (Tex. App.—Houston [14th Dist.]
1999, no pet.) (prosecutor’s statements that jury should assess lengthy
sentence because DWI defendant would drive drunk again and kill someone was a
proper plea for law enforcement).

            Next,
Curry contends the argument was improper because it implicated community expectations.
 The State may argue the impact of the verdict on the community, but it may not
tell the jury that the community expects a particular verdict.  See Borjan
v. State, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990); Cain v. State,
549 S.W.2d 707, 717 (Tex. Crim. App. 1977).  Curry points to the prosecutor’s
later argument that “if you want to be lenient, give him whatever you want to
give him on this case and then give him a year for each of those ten prior
felony convictions.”  But Curry did not object to this portion of the argument
and therefore has not preserved the issue for review.  See Tex. R. App.
P. 33.1; see also Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App.
1996) (“Before a defendant will be permitted to complain on appeal about an
erroneous jury argument . . . he will have to show he objected and pursued his
objection to an adverse ruling.”).  

            In
any event, at no time did the prosecutor argue that the community expected a
particular verdict.  The prosecutor argued that that the people who live in
that area have the right to be free of Curry’s criminal activity.  Such an
argument does not implicate community expectations.  See Yuhl v. State,
784 S.W.2d 714, 723 (Tex. App.—Houston [14th Dist.] 1990, pet. ref’d) (argument
that jury owed duty to “the rest of the people of this county” to put defendant
away for a long time was proper plea for law enforcement that did not implicate
community expectations); see also Alexander v. State, 919 S.W.2d
756, 764 (Tex. App.—Texarkana 1996, no pet.) (holding argument that defendant
deserved a life sentence because “it serves the community as a whole” did not
implicate community expectations).

            Finally,
Curry contends the argument was unduly inflammatory, but as explained above,
nothing in the argument was improper, much less unduly inflammatory.  Accordingly,
the trial court did not err by overruling Curry’s objection because the
argument was not improper.  We overrule Curry’s third issue.

V

            In
his fourth issue, Curry contends the trial court erred by submitting a jury
instruction on constructive transfer because there was no evidence to support
this theory of delivery and it created the potential for a non-unanimous
verdict. 

            Delivery
of a controlled substance can be accomplished three ways:  (1) actual delivery;
(2) constructive delivery; and (3) offer to sell.  Tex. Health & Safety
Code § 481.002(8).  The indictment alleged delivery by all three methods and
the charge authorized the jury to convict appellant on any of them.  The jury
returned a general verdict of guilt.

            The
State does not dispute that the trial court erred in submitting a charge on
constructive delivery, but contends the error was harmless.  When, as here, the
appellant did not object to the charge, reversal is not required unless the
harm is egregious.  Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984) (op. on reh’g).  In determining whether error is egregious, we
consider the entire jury charge, the state of the evidence, the arguments of
counsel, and any other relevant information revealed by the trial record as a
whole.  See Sanchez v. State, 209 S.W.3d 117, 121 (Tex. Crim. App.
2006); Almanza, 686 S.W.2d at 171.  The error must have been so harmful
that the defendant was effectively denied a fair and impartial trial.  See
Almanza, 686 S.W.2d at 172.  

            Here,
the jury was instructed to return a “guilty” verdict only if it found beyond a
reasonable doubt that Curry delivered cocaine by actual delivery, constructive
delivery, or offer to sell.  It is undisputed that the evidence is legally
sufficient to support Curry’s conviction under the theory of actual delivery. 
Further, the prosecutor made no mention of constructive delivery during his
closing argument; he relied solely on the theory of actual delivery.  And there
was no contested issue regarding the mode of delivery; the only contested issue
was the identity of the person who delivered the cocaine to the officers.  We cannot
conclude that the charge error caused Curry egregious harm requiring reversal. 
See Sanders v. State, 787 S.W.2d 435, 440–41 (Tex. App.—Houston [1st
Dist.] 1990, pet. ref’d) (error in submission of constructive delivery
instruction when there was no evidence of constructive delivery was harmless
when evidence was sufficient to prove actual delivery); see also Payne
v. State, 194 S.W.3d 689, 698–99 (Tex. App.—Houston [14th Dist.] 2006, pet.
ref’d) (citing Watson v. State, 693 S.W.2d 938, 939–42 (Tex. Crim. App.
1985)).

            Curry
also argues that the trial court’s submission of all three types of delivery
exposed him to the possibility of a non-unanimous verdict.  In support of his
contention that he was entitled to a unanimous jury verdict, Curry cites Francis
v. State, 36 S.W.3d 121 (Tex. Crim. App. 2000).  In Francis, the
jury was permitted to find the defendant guilty of indecency with a child by
either of two separate offenses submitted in the disjunctive.  See id.
at 122, 125.  Thus, it was possible that six jurors could have convicted the
defendant on the first charged offense and the other six could have convicted
him of the second offense, depriving the defendant of the right to be convicted
by a unanimous jury.  Id. at 125.  

            Here,
in contrast, the trial court’s charge instructed the jury disjunctively on
alternative means of committing a single offense of delivery of cocaine, not
three different offenses.  See Rodriguez v. State, 89 S.W.3d 699, 701
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  A trial court may properly
charge the jury with the three alternative methods of committing the single
offense of delivery of a controlled substance, and the jury need not agree on
the type of delivery to convict a defendant of this offense.  Id. at
701–02.  Thus, the charge did not deny Curry a unanimous verdict.  We overrule
his fourth issue.

* * *

            Having
overruled Curry’s issues, we affirm the trial court’s judgment. 

 








                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Frost, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
Article 35.16 permits the State to challenge for cause a potential juror who
“has a bias or prejudice against any phase of the law upon which the State is
entitled to rely for conviction or punishment.”  Tex. Code Crim. Proc. art.
35.16(b)(3).





[2]
443 U.S. 307 (1979).